UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

DAVID EHRICH,

    Plaintiff,

v.                                                                                  Case No.: 1:15-cv-22796-KMM

CONVERGENT OUTSOURCING, INC.,

    Defendant.
_____/

**DEFENDANT'S REPLY TO PLAINTIFF'S
RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

    COMES NOW, Defendant CONVERGENT OUTSOURCING, INC. ("Defendant"), by and through its undersigned counsel, pursuant to Local Rule 7.1(c), and hereby files this Reply to Plaintiff's Response to Defendant's Motion to Dismiss, and states as follows:

    In his Response, consisting of two substantive pages, Plaintiff urges the Court to adopt the reasoning set forth in *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) and argues that the appellate cases cited by Defendant in its Motion to Dismiss are distinguishable from the facts of the cases at bar. *See,* DE 9, generally. Plaintiff does not address any of the cases cited by Defendant which uniformly stand for the proposition that an offer to "settle" a debt does not constitute a threat of litigation as a matter of law, nor does Plaintiff address the fact that the FDCPA omits from its litany of required disclosures a requirement that debt collectors disclose that a debt is time-barred. Because the reasoning of *McMahon* is flawed and at odds with Eleventh Circuit precedent, and because at least one of the appellate decisions relied upon by Defendant involved facts identical to those in the case at bar, Plaintiff's argument is insufficient to defeat Defendant's Motion to Dismiss.

### I.    Plaintiff attempt to distinguish *Huertas* is unavailing.

Plaintiff asserts that "unlike both *McMahon* and the instant case, the dunning letters in [] *Huertas* simply sought payment of the debt and did not offer to 'settle' under an artificial deadline." *See,* DE 9 at p. 2. Plaintiff's assertion is demonstratively false. To be sure, one of the letter at issue in *Huertas v. Galaxy Asset Mgt.*, 641 F.3d 28 (3d Cir. 2011) stated, in pertinent part, the following:

> Capital Management Services, LP is authorized to accept less than the full balance due as settlement of the above account. The settlement amount of $993.07, which represents 60% of the amount presently owed, is due in our office no later than forty-five (45) days after receiving this notice. We are not obligated to renew this offer.

*See,* "Exhibit A" attached hereto.

In affirming the District Court's dismissal of the plaintiff's FDCPA claims premised upon the "time barred" nature of the debt at issue, the Third Circuit Court of Appeals applied the "least sophisticated consumer" standard -- the same standard adopted by the Eleventh Circuit. *See, Huertas*, 641 F.3d at 33; *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010).

In the instant case, as in *Huertas*, Plaintiff's claim is premised upon Defendant's offer to "settle [Plaintiff's] account for 50% of your total balance due […] within 45 days[.]" *See,* DE 1 and 4-1. As such, Plaintiff's attempt to distinguish *Huertas* is unavailing.

### II.    The Court should decline to follow *McMahon*.

In his Response, Plaintiff fails to address <u>any</u> of the cases cited by Defendant which hold as a matter of law that an offer to "settle" does not constitute a "threat to sue." *See,* DE 4 at pp. 9 – 10. Instead, Plaintiff urges the Court to adopt the *McMahon* Court's reasoning that "an unsophisticated consumer would believe a letter that offers to 'settle' a debt implies that the debt

is legally enforceable[.]" *See,* DE 9 at p. 2. As this rationale is at odds with the "least sophisticated consumer" standard which this Court is bound to employ, the Court must decline Plaintiff's invitation.

The Eleventh Circuit has defined the "least sophisticated consumer" standard objectively as follows:

> The "least sophisticated consumer" can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care. However, the test has an objective component in that while protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness.

*LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010)(internal citations omitted).

Other Courts have similarly noted that "[t]he hypothetical least sophisticated consumer ... is neither irrational nor a dolt." *See, Gabriele*, 503 Fed. Appx. 89, 95 (2d Cir. 2012), *citing Ellis v. Solomon & Solomon, P.C.,* 591 F.3d 130, 135 (2d Cir.2010); *see also*, *Kromelbein v. Envision Payment Solutions, Inc*., 3:11-CV-1598, 2013 WL 3947109, at *9 (M.D. Pa. 2013) ("the least sophisticated consumer is not absent all intelligence.")(internal citations omitted).

Plaintiff asks this Court to find that the least sophisticated consumer would equate the term "settle" or "settlement" with a threat to bring legal action or an implied statement that the debt is legally enforceable. As noted *supra*, the least sophisticated consumer is "presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *LeBlanc*, 601 F.3d at 1194. Accordingly, the least sophisticated consumer is similarly presumed to have a fundamental ability to read. The Merriam-Webster Dictionary contains the following definition of the terms "settle" and "settlement":

SETTLE

*transitive verb*

1

**:** to place so as to stay

2

**a :** to establish in residence
**b :** to furnish with inhabitants **:** COLONIZE

3

**a :** to cause to pack down
**b :** to clarify by causing dregs or impurities to sink

4

**:** to make quiet or orderly

5

**a :** to fix or resolve conclusively <*settle* the question>
**b :** to establish or secure permanently <*settle* the order of royal succession>
**c :** to conclude (a lawsuit) by agreement between parties usually out of court
**d :** to close (as an account) by payment often of less than is due

6

**:** to arrange in a desired position

7

**:** to make or arrange for final disposition of <*settled* his affairs>

8

*of an animal* **:** IMPREGNATE

*intransitive verb*

1

**:** to come to rest

2

**a :** to sink gradually or to the bottom
**b :** to become clear by the deposit of sediment or scum
**c :** to become compact by sinking

3

**a :** to become fixed, resolved, or established <a cold *settled* in his chest>
**b :** to establish a residence or colony <*settled* in Wisconsin> — often used with *down*

4

**a :** to become quiet or orderly
**b :** to take up an ordered or stable life —often used with *down* <marry and *settle* down>

5

**a :** to adjust differences or accounts
**b :** to come to a decision —used with *on* or *upon* <*settled* on a new plan>

    **c :** to conclude a lawsuit by agreement out of court
    **6**
    *of an animal* **:** CONCEIVE

    SETTLEMENT
    **1**
    **:** the act or process of settling
    **2**
    **a :** an act of bestowing or giving possession under legal sanction
    **b :** the sum, estate, or income secured to one by such a settlement
    **3**
    **a :** occupation by settlers
    **b :** a place or region newly settled
    **c :** a small village
    **4**
    **:** SETTLEMENT HOUSE
    **5**
    **:** an agreement composing differences
    **6**
    **:** payment or adjustment of an account

*See,* *http://www.merriam-webster.com/dictionary/settle*; *http://www.merriam-webster.com/dictionary/settlement* (accessed August 12, 2015).

  Notably, neither "settle" nor "settlement" is defined as "capable of being enforced in court". While one of the twenty-five listed definitions for the word "settle" is admittedly "to conclude (a lawsuit) by agreement between parties usually out of court", another is "to close (as an account) by payment often of less than is due[.]" *Ibid.* A correct application of the relevant standard reveals that the least sophisticated *non-attorney* consumer would likely interpret "settlement" to mean "payment or adjustment of an account" when reading Defendant's letter. As was explained in the dissent of *Buchanan v. Northland Group, Inc.*, 776 F.3d 393, 400 (6th Cir. 2015):

> As a statement of Northland's willingness to accept a reduced amount in satisfaction of Buchanan's debt, that language is straightforward and direct. But her reading is more gossamer: Buchanan says that the word "settlement" is one frequently used in connection with lawsuits, which means that the word "settlement" intimates the prospect of legal action, which means that the

> settlement offer was actually an implied threat to sue, which would amount to a representation that the debt remained enforceable in court, which would be a "misleading representation" in violation of the Fair Debt Collection Practices Act.
>
> This reading of Northland's offer is implausible. The relevant perspective here is that of an unsophisticated debtor—an unsophisticated debtor, moreover, who by definition has received dunning letters for years *without a lawsuit ever having been brought against her*. In that context, the mere fact of another collection letter is itself no reason to think that a lawsuit might follow close behind. And the letter here says nothing about any lawsuit—which is good reason, so far the threat of a lawsuit is concerned, not to distinguish this letter from the legions of letters that surely preceded it. If anything, Northland's willingness to settle the debt at a discount should make the letter seem less threatening, not more.
>
> Buchanan's arguments to the contrary (or more precisely, the arguments of her counsel) reflect a different perspective. Not the perspective of the unsophisticated debtor, but rather our own perspective as lawyers and judges—whose work, by definition, is done through the vehicle of lawsuits. And from that lawsuit-saturated perspective, Buchanan suggests, we should conclude that, of the many different meanings of the word "settle"—many of which have nothing to do with lawsuits—the unsophisticated debtor would read Northland's offer to accept a 65% discount in "settlement" of her account as a threat to sue her instead. But we have no basis to read a single word—"settlement"—from a lawyerly perspective and the rest of Northland's letter from an unsophisticated one. To the contrary, we are bound to apply the unsophisticated-debtor standard all the way through.

*Id.* (Kethledge, J., dissenting).

In the instant case, unlike in *McMahon*, Defendant's letter stated, in part, that "your settlement amount would be $[REDACTED] to clear this account in full." *See,* DE 4-1 (emphasis added). Accordingly, while *Plaintiff's counsel* may from his "own perspective as [a] lawyer[]" (*Buchanan*, *supra* at 400) view the word "settlement" to connote litigation, the *least sophisticated [non-attorney] consumer* would construe the settlement offer as nothing more than an offer to resolve the outstanding balance.

Additionally, wholly absent from the letter at issue is any language the least sophisticated consumer would construe as a "threat". Merriam-Webster's defines "threat" as "1: an expression of intention to inflict evil, injury, or damage 2: one that threatens 3: an indication of something impending <the sky held a *threat* of rain>". *See,* http://www.merriam-webster.com/dictionary/threat (accessed August 12, 2015).[1] Specifically, the letter at issue contains no mention of any negative consequence in the event of non-payment -- no "or else", no "if…then…". The least sophisticated consumer standard "has an objective component in that while protecting naive consumers, […] also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness." So, the letter at issue cannot be found to contain a "threat to sue" as it contains no expression of intention or indication of something "impending". *LeBlanc*, 601 F.3d at 1194 (11th Cir. 2010)(internal citations omitted).

Finally, Plaintiff's reliance on amicus briefs filed in other cases by the Federal Trade Commission ("FTC") and Consumer Financial Protection Bureau ("CFPB") is insufficient to overcome Defendant's Motion to Dismiss. As Plaintiff acknowledges, the FTC's construction of the FDCPA is not binding on this Court. *See, e.g., Berg v. Merchants Ass'n Collection Div., Inc.*, 586 F. Supp. 2d 1336, 1342 (S.D. Fla. 2008)(Dimitrouleas, J.). Similarly, the CFPB has yet to make any rules under the FDCPA. *See, Michaelson v. CBE Group, Inc.*, 13 C 50228, 2015 WL 2449038, at *5 (N.D. Ill. May 21, 2015). As such, this Court is bound by the Eleventh Circuit's interpretation of the FDCPA, and not the interpretations of the FTC or CFPB. For the reasons detailed *supra* and in Defendant's Motion to Dismiss (DE 4), the Court must decline to

---

[1] Plaintiff's claim arises under 15 U.S.C. § 1692e which prohibits, *inter alia*, "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." *See,* 15 U.S.C. § 1692e(5). However, as the FDCPA does not define "threat", the term must "be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. U. S.*, 444 U.S. 37, 42 (1979).

"dramatically expand upon the accepted interpretation of the FDCPA that has prevailed for more than 35 years since its enactment." *Daugherty v. Convergent Outsourcing, Inc.*, CIV.A. H-14-3306, 2015 WL 3823654, at *5 (S.D. Tex. June 18, 2015)(declining to adopt the interpretations of the FTC and CFPB with respect to collection efforts directed at time-barred debts).

WHEREFORE Defendant respectfully requests an Order from this Honorable Court GRANTING Defendant's Motion to Dismiss.

<div style="text-align:right">

Respectfully submitted by:

 /s/ Dale T. Golden
DALE T. GOLDEN, ESQ.
Florida Bar No.: 0094080
 /s/ Benjamin W. Raslavich
BENJAMIN W. RASLAVICH, ESQ.
Florida Bar No.: 0102808
**GOLDEN SCAZ GAGAIN, PLLC**
201 North Armenia Avenue
Tampa, Florida 33609-2303
Phone: (813) 251-5500
Fax: (813) 251-3675
dgolden@gsgfirm.com
braslavich@gsgfirm.com
Counsel for Defendant

</div>

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 13, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

 /s/ Benjamin W. Raslavich
BENJAMIN W. RASLAVICH, ESQ.
Florida Bar No.: 0102808